IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| CHARLIE L. GATES, JR. and ) <br> KIMBERLY GATES ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> W.R. GRACE & CO., SEMINOLE ) <br> FERTILIZER CORPORATION, CARGILL ) <br> FERTILIZER, INC. and MOSAIC ) <br> FERTILIZER, LLC, ) <br> ) <br> Defendants. ) | CIVIL ACTION, <br><br> FILE NO. _____ |

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiffs Charlie L. Gates, Jr. and Kimberly Gates for their Complaint against Defendants W.R. Grace & Co., Seminole Fertilizer Corporation, Cargill Fertilizer, Inc. and Mosaic Fertilizer, LLC, allege the following:

## NATURE OF ACTION

1.

This is an action for damages brought by Plaintiffs Charlie L. Gates, Jr. ("Mr. Gates") and Kimberly Gates ("Mrs. Gates") for personal injury, property damage and loss of consortium arising out Defendants' release and discharge of toxic contaminants from a chemical fertilizer plant in Bartow, Florida, in violation of Federal and Florida environmental statutes and the common law of Florida. Mr. Gates owned and lived on property adjacent to the chemical fertilizer plant. The water, soil and air on his property was contaminated as a result of releases and discharges from the chemical fertilizer plant, as a result of which Mr. Gates contracted

leukemia. Mrs. Gates asserts a claim for loss of consortium as a result of her husband's injury and disability.

## PARTIES, JURISDICTION AND VENUE

2.

Mr. Gates and Mrs. Gates are residents of the State of Florida, currently living in Lakeland, Florida. Mr. Gates previously owned and lived on property in Bartow, Florida, adjacent to the chemical fertilizer plant owned and operated by Defendants.

3.

W.R. Grace & Co. ("Grace") is a Delaware Corporation with its principal place of business at 7500 Grace Drive, Columbia, Maryland 21044. At all relevant times hereto, Grace was authorized to do business, routinely did substantial business, and owned property in the State of Florida. At all relevant times, it maintained, but no longer maintains, a registered agent in Florida for service of process. It is subject to the jurisdiction of this Court and may be served with process by delivering a copy of the Summons and Complaint to an officer, managing or general agent, at its principal place of business in Maryland.

4.

Defendant Seminole Fertilizer Corporation ("Seminole") is a Delaware Corporation with its principal place of business at 600 North Dairy Ashford, Houston, Texas 77079. At all relevant times hereto, Seminole was and is authorized to do business, routinely did and does substantial business, and owned and now owns property in the State of Florida. It is subject to the jurisdiction of this Court and may be served with process by delivering a copy of the

Summons and Complaint to its registered agent, Corporation Service Company, at its registered office, 1201 Hays Street, Tallahassee, Florida 32301.

5.

Defendant Cargill Fertilizer, Inc. ("Cargill") is a Delaware Corporation with its principal place of business at 15615 McGinty Road West, Wayzata, Minnesota 55391. At all relevant times hereto, Cargill was authorized to do business, routinely did substantial business, and owned property in the State of Florida. At all relevant times, it maintained, but no longer maintains a registered agent in Florida for service of process. It is subject to the jurisdiction of this Court and may be served with process by delivering a copy of the Summons and Complaint to an officer, managing or general agent, at its principal place of business in corporate headquarters in Minnesota.

6.

Defendant Mosaic Fertilizer, LLC ("Mosaic") is a Minnesota limited liability company with its principal place of business at 3033 Campus Drive, Suite E490, Plymouth, Minnesota 55441-2651. At all times relevant hereto and currently, Mosaic was and is authorized to do business, routinely does substantial business, and owns property in the State of Florida. It may be served with process by delivering a copy of the Summons and Complaint to its registered agent, CT Corporation System, at its registered office, 1200 South Pine Island Road, Plantation, Florida 33324.

7.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

8.

Venue is proper in this Court under 28 U.S.C. § 1391(a) and (c) in that a substantial part of the events or omissions giving rise to the claim occurred in this jurisdiction and the Defendants are deemed to reside in this judicial district because their contacts are sufficient to subject them to personal jurisdiction here.

## FACTUAL ALLEGATIONS

9.

Mr. Gates previously owned real property in Bartow, Florida adjacent to a chemical plant and fertilizer complex ("The Bartow Fertilizer Plant" or "Plant") owned and operated, as alleged *infra*, by the Defendants. Mr. Gates and Mrs. Gates lived on the property, either part time or full time, from at least 1986 until 1996. A private well is located on the property. Mr. Gates used water from the well as drinking water and for cooking and other purposes.

10.

The Bartow Fertilizer Plant was owned and operated by Grace from at least 1975 until 1988. Seminole purchased the Plant and property in 1988 and operated the Plant until 1993. Cargill purchased the Plant and property from Seminole in 1993 and operated it until 2004. As part of a corporate reorganization, Cargill transferred the ownership and operation of the Bartow

Fertilizer Plant to Mosaic in 2004. Mosaic is the legal successor-in-interest to Cargill relating to the ownership and operation of the Plant and is liable for Cargill's prior acts and omissions.

11.

The Bartow Fertilizer Plant is located in central Polk County between Mulberry and Bartow. The Plant uses phosphate and gypsum in its operations. The Plant includes several gypsum stacks and associated water cooling ponds and ditches. The chemical plant began operation in 1954 and a gypsum stack was initiated in 1954 with another stack opened in 1965. The process water cooling ponds were created for the stacks and were added in 1964 and 1969. Certain waste clay settling areas were converted to cooling ponds between 1969 and 1976. The entire plant site is surrounded by waste settling areas, stacks, waste cooling ponds, pits and mines.

12.

The groundwater system in and around the Bartow Fertilizer Plant consists of a surficial acquifer, an intermediate acquifer, and a deep Floridan acquifer. The surficial acquifer is an unconfined system with a thickness of 50-75 feet, the top of which is within a few feet of the ground surface. The acquifer generally follows the topography. There are a number of wells in and around the Bartow Fertilizer Plant that are both in the surficial acquifer and extend into the intermediate acquifer. The well on Mr. Gates' property was in the surficial acquifer and was approximately 40 feet in depth.

13.

Grace, Seminole and Cargill (the "Operating Defendants") negligently released and discharged, both as a result of sudden and accidental events and gradual leaks over time, certain toxic contaminants into the groundwater acquifer system. The contaminants spread in the

acquifer and into Mr. Gates' well. The Operating Defendants also negligently released and discharged, both as a result of sudden and accidental events and gradual releases, contamination into the air and soil in and around the Bartow Fertilizer Plant, including in and upon Mr. Gates' property.

14.

As early as 1986, when Mr. Gates first occupied the adjacent property, Grace knew or should have known that its activities had resulted in the contamination of the water, soil and air on Mr. Gates' property. At the relevant times thereafter, each of the Operating Defendants knew or should have known that the operation of the Bartow Fertilizer Plant had resulted in and was continuing to cause, contamination of the water, soil and air on Mr. Gates' property.

15.

Grace was required to undertake a groundwater monitoring plan for the Plant by the Florida Department of Regulation ("FDER") and the United States Environmental Protection Agency ("EPA"). In accordance with the plan, Grace employed Ardaman & Associates, Inc. ("A&A") to investigate and prepare a Preliminary Groundwater Contamination Assessment Report ("The Report") pursuant to a contamination assessment plan submitted to FDER. The Report, dated August 18, 1988 from A&A to Grace concluded that, as a result of the Plant's operation, the well on Mr. Gates' property was grossly contaminated with radionuclides. Table 2 of the Report indicates that the gross s-alpha levels found in the well were 59 pCi\L and the total radium levels were 18.3 pCi\L. The maximum contaminant levels ("MCL") permitted by Federal and state regulations at the time, were 15 pCi\L for gross s-alpha radionuclides and 5

pCi\L for total radium. The MCL standards were based on the risk of cancer. As a result of the findings of grossly elevated levels of carcinogenic compounds in Mr. Gates' well, A&A recommended to Grace that the well "should not be used for potable water supply."

16.

Neither Grace, nor the subsequent owner/operators of the Plant, the other Operating Defendants herein, ever informed or warned Mr. Gates of the contamination or the risk of cancer in consuming water from the well, despite their knowledge of the recommendation of A&A, and the contamination of the water, soil and air in the area as a result of releases and discharges from the Plant. The other Operating Defendants also failed to inform Mr. Gates of the contamination or take any other action to prevent his exposure to the contaminants.

17.

As a direct and proximate result of the releases and discharges of contaminants into the water, soil and air in and around the Bartow Fertilizer Plant by the Operating Defendants, the real property previously owned by Mr. Gates adjacent to the Plant was contaminated, including its groundwater, soil and air.

18.

As a direct and proximately result of the contamination of Mr. Gates' property, and in particular the water, air and soil on the property, Mr. Gates and his family were exposed to dangerous levels of certain toxic contaminants, including specifically radionuclides.

19.

As a direct and proximate result of his exposure to the contaminants, Mr. Gates suffered personal injuries, specifically including acute promyelocytic leukemia. He has also suffered from fear, anxiety, and emotional distress as a result of the disease and because he is at substantially increased risk of additional catastrophic latent disease and injury from his exposure. He has also suffered loss wages and loss of earning capacity as a result of disability from the disease and has incurred substantial medical expenses and other economic losses.

20.

Mr. Gates was diagnosed with acute promyelocytic leukemia on December 27, 2004. He had been experiencing fever, weakness and fatigue and came to the emergency room with skin wounds and nasal bleeding. He was hospitalized for treatment, including chemotherapy, at various times during the next several months. He also suffered from aplastic anemia secondary to his chemotherapy, as well as decimated intravascular coagulation secondary to acute leukemia. Although his acute leukemia is now in remission, Mr. Gates has required medical evaluation and treatment on a periodic and continuing basis since his diagnosis and will require future evaluation and treatment.

## **COUNT 1- NEGLIGENCE**

21.

At all relevant times hereto, the Operating Defendants owed to Mr. Gates as an adjacent land owner who foreseeably could be injured by their negligence, a duty to exercise reasonable care in not releasing and discharging toxic contaminants from the Bartow Fertilizer Plant that they knew, or should have known, could result in property damage and personal injury to Mr. Gates and others. The Operating Defendants further owed a duty to exercise reasonable care to discover any such releases and discharges and to warn Mr. Gates of the contamination and the

risk from exposure to the contaminants. These duties to exercise reasonable care arose out of the common law of Florida, as well as relevant Federal and state environmental regulations.

22.

In breach of their duties to exercise reasonable care, each of the Operating Defendants was negligent in connection with numerous similar but distinct separate instances and occurrences, many of which were discreet, sudden and accidental, over a period of years in at least the following respects:

(a) In releasing and discharging toxic contaminants from the Bartow Fertilizer Plant into the groundwater, soil and air into and adjacent to the Plant. The Operating Defendants knew or should have known, that hazardous toxic contaminants were being produced, released and discharged from the operation, specifically including the stacks and cooling ponds, but failed to use available technology, procedures and knowledge to prevent and control such releases and discharges;

(b) In failing to discover the contamination sooner and, in particular, that the groundwater contamination had migrated onto adjacent property and into private wells that were used for drinking water;

(c) In failing to warn Mr. Gates and others of the contamination, particularly of the water supply in his well, and the likelihood that he had and would be exposed to toxic chemicals; and

(d) In failing to remediate or take other action to remove or control the contamination or to prevent Mr. Gates and others from being exposed to it.

23.

As a direct and proximate result of the Operating Defendants' wrongful acts and omissions, Mr. Gates' property was contaminated as is alleged in more detail in paragraphs 13 through 15, *supra*.

24.

As a direct and proximate result of the Operating Defendants' wrongful acts and omissions, Mr. Gates was exposed to the toxic contaminants in the water, soil and air and has suffered personal injuries as set out in more detail in paragraphs 18 through 20, *supra*.

25.

Mosaic as the legal successor-in-interest to Cargill in connection with the ownership and operation of the Plant, is liable to Mr. Gates for Cargill's acts of omissions.

26.

Mr. Gates seeks to recover against the Operating Defendants for his personal injuries, emotional distress, fear and anxiety and for his economic losses, including medical expenses, lost income and other losses, as well as the damage to his real property.

## **COUNT II – NEGLIGENCE *PER SE***

27.

The Operating Defendants violated various Federal, state and local environmental laws and regulations relating to the release and discharge of toxic pollutants into the water, soil and air, including specifically Federal and state regulations imposing MCLs for contaminants in

drinking water. Such laws and regulations were designed to prevent the kind of harm suffered by Mr. Gates.

28.

The Operating Defendants' violations of such laws and regulations constitute negligence *per se*, for which they are strictly liable to Plaintiffs. Mosaic is liable for the acts and omissions of Cargill as the legal successor-in-interests to Cargill in connection with the ownership and operation of the Plant.

29.

As a direct and proximate result of the Operating Defendants negligence *per se*, Mr. Gates has been injured as alleged more fully above and is entitled to recover damages for his personal injuries and property damage in an amount to be proven at trial.

## COUNT III - NUISANCE

30.

Mr. Gates also asserts a claim against the Operating Defendants for damages as a result of private nuisance. The Operating Defendants' conduct as described above constitutes an actionable nuisance because it unreasonably interfered with Mr. Gates use and enjoyment of his property, as more fully described above. Mosaic is liable for such nuisance as the legal successor-in-interest to Cargill in connection with the ownership and operation of the Plant.

31.

As a direct and proximate result of the Operating Defendants' wrongful creation of a nuisance, Mr. Gates has suffered injury to his property and is entitled to recover monetary damages for the loss of the use and enjoyment of the property caused by the nuisance.

32.

As a further direct and proximate result of the creation of a nuisance, Mr. Gates has suffered personal injuries and is entitled to recover for his physical injuries, emotional distress, fear and anxiety and for his economic losses, including medical expenses, lost income and other losses, as more fully alleged in the paragraphs above.

### COUNT IV- TRESPASS

33.

Mr. Gates also asserts a claim for damages as a result of trespass to his property. The Operating Defendants conduct, as described above, resulted in the release and discharge of hazardous and toxic contaminants into the water, soil and air on Plaintiff's property. The physical invasion of Plaintiff's property by such toxic contaminants constitutes a trespass to the property for which Plaintiff is entitled to recover damages. Mosaic as the legal successor-in-interest to Cargill in connection with the ownership and operation of the Plant also is liable for such trespass.

34.

As a direct and proximate result of the Operating Defendants' wrongful conduct in trespassing on Plaintiff's private property, Mr. Gates has suffered injury to his property and is entitled to recover monetary damages.

35.

As a further direct and proximate result of the Operating Defendants trespass, Mr. Gates has suffered personal injuries as described in greater detail above. He is entitled to recover damages for such personal injuries, emotional distress, fear and anxiety and for the economic

losses, including medical expenses, lost income and other losses resulting from such trespass on his property.

## COUNT V-LOSS OF CONSORTIUM

36.

Kimberly Gates incorporates by reference paragraphs 1 through 35 above and asserts a claim for loss consortium, including loss of society, companionship, and assistance of her husband Mr. Gates at various times as a result of his injury and disability, as is alleged more fully above. At all times material hereto, the Plaintiff, Kimberly Gates, is and was the lawfully wedded wife of the Plaintiff, Charlie L. Gates, Jr., and as a direct and proximate result of the foregoing, Kimberly Gates has been deprived of the care, comfort, companionship and society of her husband, the Plaintiff, Charlie L. Gates, Jr., and she will be so deprived in the future.

## COUNT VI- STRICT LIABILITY PURSUANT TO § 376.313 FLA. ST.

37.

The Operating Defendants' wrongful acts and omissions in releasing and discharging toxic pollutants and contaminants, as is alleged in more detail above, was in violation of various environmental statutes in the State of Florida, including but not limited to the following:

(a) Discharging pollutants or hazardous substances into or upon surface or ground waters of the state or land in violation of § 376.302(1)(a) Fla. St.; and

(b) Failure to immediately remediate, contain, remove and abate the discharges in violation of § 376.305(1) Fla. St.

38.

The Operating Defendants, and Mosaic as the legal successor-in-interest to Cargill, are strictly liable for damages to Mr. Gates and Mrs. Gates resulting from such discharges or other conditions of pollution covered by §§ 376.30 – 376.319 Fla. St., and Mr. Gates and Mrs. Gates are not required to plead or prove negligence in any form or manner, pursuant to § 376.313 Fla. St., because it is sufficient to plead and prove, as set forth in various paragraphs above, that the prohibited discharges or other polluting conditions occurred.

39.

As a direct and proximate result of such discharges and other conditions of pollution, Mr. Gates and Mrs. Gates have been injured and are entitled to damages as set forth in more detail in the paragraphs above. Mr. Gates and Mrs. Gates are also entitled to recover under the statute for their attorney fees and expenses in pursuing his claim.

WHEREFORE, Plaintiff Charlie L. Gates, Jr. and Kimberly Gates demand a jury trial and prays for a judgment as follows:

a. That Mr. Gates recover damages for his personal injuries, economic losses and property damages, as set forth above against the Operating Defendants in an amount in excess of $75,000.00. The exact amount of which will be proven at trial;

b. That Mrs. Gates recovery for her loss of consortium;

c. That Mr. Gates and Mrs. Gates recover their attorneys' fees and expenses for prosecuting this action; and

d.  For such other and further relief as the Court deems proper.

Respectfully submitted,

_____
John S. Kalil, Esq.
Florida State Bar No. 0243061
Law Offices of John S. Kalil, P.A.
6817 Southpoint Parkway
Suite 1402
Jacksonville, Florida 32216
(904) 355-3311
(904) 355-5411 – facsimile
jkalil@akjaxlaw.com
**TRIAL COUNSEL**