IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| CHARLIE L. GATES, JR. and<br>KIMBERLY GATES,<br><br>    Plaintiff,<br><br>v.<br><br>W.R. GRACE & CO., SEMINOLE<br>FERTILIZER CORPORATION, et al.<br><br>    Defendants. | )<br>)<br>)<br>)   CIVIL ACTION,<br>)<br>)   FILE NO. 8:08-CV-2560-T-27 TBM<br>)<br>)<br>)<br>)<br>) |

**FIRST AMENDED COMPLAINT FOR DAMAGES
<u>AND DEMAND FOR JURY TRIAL</u>**

In accordance with the Court's Order filed on May 21, 2009 (DKT. 40), Plaintiffs

Charlie L. Gates, Jr., and Kimberly Gates for their First Amended Complaint against

Defendants W.R. Grace & Co., Seminole Fertilizer Corporation, Cargill Fertilizer, Inc.

and Mosaic Fertilizer, LLC, allege the following:

**<u>NATURE OF ACTION</u>**

1.

This is an action for damages brought by Plaintiff Charlie L. Gates, Jr. ("Mr.

Gates") for personal injury and property damage arising out Defendants' release and

discharge of toxic contaminants from a chemical fertilizer plant in Bartow, Florida, in

violation of Federal and Florida environmental statutes and the common law of Florida.

Mr. Gates owned and lived on property adjacent to the chemical fertilizer plant. The

water, soil and air on his property was contaminated as a result of releases and discharges

from the chemical fertilizer plant, as a result of which Mr. Gates contracted leukemia.

## PARTIES, JURISDICTION AND VENUE

2.

Mr. Gates is a resident of the State of Florida, currently living in Lakeland, Florida. He previously owned and lived on property in Bartow, Florida, adjacent to the chemical fertilizer plant owned and operated by Defendants.

3.

W.R. Grace & Co. ("Grace") is a Delaware Corporation with its principal place of business at 7500 Grace Drive, Columbia, Maryland 21044. At all relevant times hereto, Grace was authorized to do business, routinely did substantial business, and owned property in the State of Florida. At all relevant times, it maintained, but no longer maintains, a registered agent in Florida for service of process. It is subject to the jurisdiction of this Court and may be served with process by delivering a copy of the Summons and Complaint to an officer, managing or general agent, at its principal place of business in Maryland.

4.

Defendant Seminole Fertilizer Corporation ("Seminole") is a Delaware Corporation with its principal place of business at 600 North Dairy Ashford, Houston, Texas 77079. At all relevant times hereto, Seminole was and is authorized to do business, routinely did and does substantial business, and owned and now owns property in the State of Florida. It is subject to the jurisdiction of this Court and may be served with process by delivering a copy of the Summons and Complaint to its registered agent,

Corporation Service Company, at its registered office, 1201 Hays Street, Tallahassee, Florida 32301.

5.

Defendant Cargill Fertilizer, Inc. ("Cargill") is a Delaware Corporation with its principal place of business at 15615 McGinty Road West, Wayzata, Minnesota 55391. At all relevant times hereto, Cargill was authorized to do business, routinely did substantial business, and owned property in the State of Florida. At all relevant times, it maintained, but no longer maintains a registered agent in Florida for service of process. It is subject to the jurisdiction of this Court and may be served with process by delivering a copy of the Summons and Complaint to an officer, managing or general agent, at its principal place of business in corporate headquarters in Minnesota.

6.

Defendant Mosaic Fertilizer, LLC ("Mosaic") is a Minnesota limited liability company with its principal place of business at 3033 Campus Drive, Suite E490, Plymouth, Minnesota 55441-2651. At all times relevant hereto and currently, Mosaic was and is authorized to do business, routinely does substantial business, and owns property in the State of Florida. It may be served with process by delivering a copy of the Summons and Complaint to its registered agent, CT Corporation System, at its registered office, 1200 South Pine Island Road, Plantation, Florida 33324.

7.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

8.

Venue is proper in this Court under 28 U.S.C. § 1391(a) and (c) in that a substantial part of the events or omissions giving rise to the claim occurred in this jurisdiction and the Defendants are deemed to reside in this judicial district because their contacts are sufficient to subject them to personal jurisdiction here.

**FACTUAL ALLEGATIONS**

9.

Mr. Gates previously owned real property in Bartow, Florida adjacent to a chemical plant and fertilizer complex ("The Bartow Fertilizer Plant" or "Plant") owned and operated, as alleged *infra*, by the Defendants. Mr. Gates lived on the property, either part time or full time, from at least 1986 until 1996. A private well is located on the property. Mr. Gates used water from the well as drinking water and for cooking and other purposes.

10.

The Bartow Fertilizer Plant was owned and operated by Grace from at least 1975 until 1988. Seminole purchased the Plant and property in 1988 and operated the Plant until 1993. Cargill purchased the Plant and property from Seminole in 1993 and operated it until 2004. As part of a corporate reorganization, Cargill transferred the ownership and operation of the Bartow Fertilizer Plant to Mosaic in 2004. Mosaic is the legal successor-in-interest to Cargill relating to the ownership and operation of the Plant and is liable for Cargill's prior acts and omissions.

11.

The Bartow Fertilizer Plant is located in central Polk County between Mulberry and Bartow. The Plant uses phosphate and gypsum in its operations. The Plant includes several gypsum stacks and associated water cooling ponds and ditches. The chemical plant began operation in 1954 and a gypsum stack was initiated in 1954 with another stack opened in 1965. The process water cooling ponds were created for the stacks and were added in 1964 and 1969. Certain waste clay settling areas were converted to cooling ponds between 1969 and 1976. The entire plant site is surrounded by waste settling areas, stacks, waste cooling ponds, pits and mines.

12.

The groundwater system in and around the Bartow Fertilizer Plant consists of a surficial acquifer, an intermediate acquifer, and a deep Floridan acquifer. The surficial acquifer is an unconfined system with a thickness of 50-75 feet, the top of which is within a few feet of the ground surface. The acquifer generally follows the topography. There are a number of wells in and around the Bartow Fertilizer Plant that are both in the surficial acquifer and extend into the intermediate acquifer. The well on Mr. Gates' property was in the surficial acquifer and was approximately 40 feet in depth.

13.

Grace, Seminole and Cargill (the "Operating Defendants") negligently released and discharged, both as a result of sudden and accidental events and gradual leaks over time, certain toxic contaminants into the groundwater acquifer system. The contaminants spread in the acquifer and into Mr. Gates' well. The Operating Defendants also negligently released and discharged, both as a result of sudden and accidental events and

gradual releases, contamination into the air and soil in and around the Bartow Fertilizer Plant, including in and upon Mr. Gates' property.

14.

As early as 1986, when Mr. Gates first occupied the adjacent property, Grace knew or should have known that its activities had resulted in the contamination of the water, soil and air on Mr. Gates' property. At the relevant times thereafter, each of the Operating Defendants knew or should have known that the operation of the Bartow Fertilizer Plant had resulted in and was continuing to cause, contamination of the water, soil and air on Mr. Gates' property.

15.

Grace was required to undertake a groundwater monitoring plan for the Plant by the Florida Department of Regulation ("FDER") and the United States Environmental Protection Agency ("EPA"). In accordance with the plan, Grace employed Ardaman & Associates, Inc. ("A&A") to investigate and prepare a Preliminary Groundwater Contamination Assessment Report ("The Report") pursuant to a contamination assessment plan submitted to FDER. The Report, dated August 18, 1988 from A&A to Grace concluded that, as a result of the Plant's operation, the well on Mr. Gates' property was grossly contaminated with radionuclides. Table 2 of the Report, a copy of which is attached hereto as Exhibit 1, indicates that the gross s-alpha levels found in the well were 59 pCi\L and the total radium levels were 18.3 pCi\L. The maximum contaminant levels ("MCL") permitted by Federal and state regulations at the time, were 15 pCi\L for gross

s-alpha radionuclides and 5 pCi\L for total radium.  The MCL standards were based on the risk of cancer.  As a result of the findings of grossly elevated levels of carcinogenic compounds in Mr. Gates' well, A&A recommended to Grace that the well "should not be used for potable water supply."

16.

Neither Grace, nor the subsequent owner/operators of the Plant, the other Operating Defendants herein, ever informed or warned Mr. Gates of the contamination or the risk of cancer in consuming water from the well, despite their knowledge of the recommendation of A&A, and the contamination of the water, soil and air in the area as a result of releases and discharges from the Plant.  The other Operating Defendants also failed to inform Mr. Gates of the contamination or take any other action to prevent his exposure to the contaminants.

17.

As a direct and proximate result of the releases and discharges of contaminants into the water, soil and air in and around the Bartow Fertilizer Plant by the Operating Defendants, the real property previously owned by Mr. Gates adjacent to the Plant was contaminated, including its groundwater, soil and air.

18.

As a direct and proximately result of the contamination of Mr. Gates' property, and in particular the water, air and soil on the property, Mr. Gates and his family were

exposed to dangerous levels of certain toxic contaminants, including specifically radionuclides.

19.

As a direct and proximate result of his exposure to the contaminants, Mr. Gates suffered personal injuries, specifically including acute promyelocytic leukemia. He has also suffered from fear, anxiety, and emotional distress as a result of the disease and because he is at substantially increased risk of additional catastrophic latent disease and injury from his exposure. He has also suffered loss wages and loss of earning capacity as a result of disability from the disease and has incurred substantial medical expenses and other economic losses.

20.

Mr. Gates was diagnosed with acute promyelocytic leukemia on December 27, 2004. He had been experiencing fever, weakness and fatigue and came to the emergency room with skin wounds and nasal bleeding. He was hospitalized for treatment, including chemotherapy, at various times during the next several months. He also suffered from aplastic anemia secondary to his chemotherapy, as well as decimated intravascular coagulation secondary to acute leukemia. Although his acute leukemia is now in remission, Mr. Gates has required medical evaluation and treatment on a periodic and continuing basis since his diagnosis and will require future evaluation and treatment.

## COUNT 1 - NEGLIGENCE

21.

At all relevant times hereto, the Operating Defendants owed to Mr. Gates as an adjacent land owner who foreseeably could be injured by their negligence, a duty to

exercise reasonable care in not releasing and discharging toxic contaminants from the Bartow Fertilizer Plant that they knew, or should have known, could result in property damage and personal injury to Mr. Gates and others. The Operating Defendants further owed a duty to exercise reasonable care to discover any such releases and discharges and to warn Mr. Gates of the contamination and the risk from exposure to the contaminants. These duties to exercise reasonable care arose out of the common law of Florida, as well as relevant Federal and state environmental regulations.

22.

In breach of their duties to exercise reasonable care, each of the Operating Defendants was negligent in connection with numerous similar but distinct separate instances and occurrences, many of which were discreet, sudden and accidental, over a period of years in at least the following respects:

(a)     In releasing and discharging toxic contaminants from the Bartow Fertilizer Plant into the groundwater, soil and air into and adjacent to the Plant. The Operating Defendants knew or should have known, that hazardous toxic contaminants were being produced, released and discharged from the operation, specifically including the stacks and cooling ponds, but failed to use available technology, procedures and knowledge to prevent and control such releases and discharges;

(b)     In failing to discover the contamination sooner and, in particular, that the groundwater contamination had migrated onto adjacent property and into private wells that were used for drinking water;

(c)     In failing to warn Mr. Gates and others of the contamination, particularly of the water supply in his well, and the likelihood that he had and would be exposed to toxic chemicals; and

(d)     In failing to remediate or take other action to remove or control the contamination or to prevent Mr. Gates and others from being exposed to it.

23.

As a direct and proximate result of the Operating Defendants' wrongful acts and omissions, Mr. Gates' property was contaminated as is alleged in more detail in paragraphs 13 through 15*, supra.*

24.

As a direct and proximate result of the Operating Defendants' wrongful acts and omissions, Mr. Gates was exposed to the toxic contaminants in the water, soil and air and has suffered personal injuries as set out in more detail in paragraphs 18 through 20, *supra.*

25.

Mosaic as the legal successor-in-interest to Cargill in connection with the ownership and operation of the Plant, is liable to Mr. Gates for Cargill's acts of omissions.

26.

Mr. Gates seeks to recover against the Operating Defendants for his personal injuries, emotional distress, fear and anxiety and for his economic losses, including

medical expenses, lost income and other losses, as well as the damage to his real property.

## AMENDED COUNT II – NEGLIGENCE *PER SE*

27.

The Operating Defendants discharged pollutants or hazardous substances, namely radionuclides, into or upon the surface of groundwater of the State of Florida or lands, which discharges were in excess of or contrary to controlling standards, in violation of § 376.302(1)(a) Fla. St.  The Operating Defendants also violated § 376.305 Fla. St. by failing to immediately undertake to contain, remove and abate the discharges.  Upon information and belief, Plaintiffs further allege that the discharges were in violation of other Federal and Florida statutory provisions and regulations but cannot specify the statutory or regulatory provisions, or the detailed facts relating to the violations, without conducting further discovery of information, which is in the exclusive control of the defendants.  If and when Plaintiffs have discovered the necessary information they will seek leave of the Court to amend further this Complaint to allege the additional violations.

28.

Section 376.313 Fl. St. imposes strict liability for the violation of §§ 376.302 and 376.305.  These penal statutes establish a duty to take precautions to protect a particular class of persons, owners, occupiers and users of the contaminated land and water, from a particular injury or type of injury, the possible toxic effects from which the relevant standards are designed to protect.  Plaintiff Charlie L. Gates, Jr., was within the class of persons the statutes were designed to protect and he has suffered the kind of harm the

statutes were designed to prevent, as is alleged in more detail in paragraph 15 above. In particular, he has suffered personal injury from the discharges of a hazardous substance into the groundwater in excess of a standard imposed by the Federal Department of Environmental Protection.

29.

The Operating Defendants' violations of such laws and regulations constitute negligence *per se,* for which they are strictly liable to Plaintiffs. Mosaic is liable for the acts and omissions of Cargill as the legal successor-in-interests to Cargill in connection with the ownership and operation of the Plant.

30.

As a direct and proximate result of the Operating Defendants negligence *per se*, Mr. Gates has been injured as alleged more fully above and is entitled to recover damages for his personal injuries and property damage in an amount to be proven at trial.

**COUNT III – NUISANCE**
**DISMISSAL BY COURT ORDER**

31.

Plaintiffs previously alleged that the Operating Defendants conduct as described above constituted an actionable nuisance because it unreasonably interfered with Mr. Gates' use and enjoyment of his property. The alleged interference was that the use of the groundwater for drinking water caused injury to his property and personal injuries, including acute promyelocytic leukemia. To the extent that the Court's Order on the motion to dismiss (DKT. 40) requires Plaintiffs to allege facts that they were annoyed or disturbed in the use of the property or that its occupation was physically uncomfortable at the time of the creation of the nuisance, Plaintiffs are unable to amend their allegations

because they were not informed of the contamination at the time, and were unaware of the interference with their use and enjoyment until later.

## COUNT IV – TRESPASS

### 32.

Mr. Gates also asserts a claim for damages as a result of trespass to his property. The Operating Defendants conduct, as described above, resulted in the release and discharge of hazardous and toxic contaminants into the water, soil and air on Plaintiff's property. The physical invasion of Plaintiff's property by such toxic contaminants constitutes a trespass to the property for which Plaintiff is entitled to recover damages. Mosaic as the legal successor-in-interest to Cargill in connection with the ownership and operation of the Plant also is liable for such trespass.

### 33.

As a direct and proximate result of the Operating Defendants' wrongful conduct in trespassing on Plaintiff's private property, Mr. Gates has suffered injury to his property and is entitled to recover monetary damages.

### 34.

As a further direct and proximate result of the Operating Defendants trespass, Mr. Gates has suffered personal injuries as described in greater detail above. He is entitled to recover damages for such personal injuries, emotional distress, fear and anxiety and for the economic losses, including medical expenses, lost income and other losses resulting from such trespass on his property.

## COUNT V -  STRICT LIABILITY PURSUANT TO § 376.313 FLA. ST.

### 35.

The Operating Defendants' wrongful acts and omissions in releasing and discharging toxic pollutants and contaminants, as is alleged in more detail above, was in violation of various environmental statutes in the State of Florida, including but not limited to the following:

(a)     Discharging pollutants or hazardous substances into or upon surface or ground waters of the state or land in violation of § 376.302(1)(a) Fla. St.; and

(b)     Failure to immediately remediate, contain, remove and abate the discharges in violation of § 376.305(1) Fla. St.

### 36.

The Operating Defendants, and Mosaic as the legal successor-in-interest to Cargill, are strictly liable for damages to Mr. Gates resulting from such discharges or other conditions of pollution covered by §§ 376.30 – 376.319 Fla. St., and Mr. Gates is not required to plead or prove negligence in any form or manner, pursuant to § 376.313 Fla. St., because it is sufficient to plead and prove, as set forth in various paragraphs above, that the prohibited discharges or other polluting conditions occurred.

### 37.

As a direct and proximate result of such discharges and other conditions of pollution, Mr. Gates has been injured and is entitled to damages as set forth in more detail in the paragraphs above.  Mr. Gates is also entitled to recover under the statute for his attorney fees and expenses in pursuing his claim.

## COUNT VI -  LOSS OF CONSORTIUM

38.

Kimberly Gates incorporates by reference paragraphs 1 through 37 above and asserts a claim for loss of consortium, including loss of society, companionship, and assistance of her husband Mr. Gates at various times as a result of his injury and disability, as is alleged more fully above.  At all times material hereto, the Plaintiff, Kimberly Gates, is and was the lawfully wedded wife of the Plaintiff, Charlie L. Gates, Jr., and as a direct and proximate result of the foregoing, Kimberly Gates has been deprived of the care, comfort, companionship and society of her husband, the Plaintiff, Charlie L. Gates, Jr., and she will be so deprived in the future.  Kimberly Gates seeks all damages she is entitled to recover under Florida law.

WHEREFORE, Plaintiffs Charlie L. Gates, Jr. and Kimberly Gates demand a jury trial and pray for a judgment as follows:

a.      That they recover damages for their personal injuries, economic losses and property damages, as set forth above against the Operating Defendants in an amount in excess of $75,000.00.  The exact amount of which will be proven at trial; and

b.      That they recover their attorneys' fees and expenses for prosecuting this action;

c.  That Plaintiff's wife, Kimberly Gates, recovers damages for her loss of

consortium as referenced above; and

d.  For such other and further relief as the Court deems proper.


Respectfully submitted,



   /s/ John S. Kalil_____
John S. Kalil
Florida State Bar No. 243061
Law Offices of John S. Kalil, P.A.
6817 Southpoint Parkway,  Suite 1402
Jacksonville, Florida  32216
(904) 355-3311 - Telephone
(904) 355-5411 – Facsimile
jkalil@akjaxlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2009, I forwarded the above instrument, along with the referenced attachments, to the following individuals via electronic mail and United States Mail:

David B. Weinstein, Esq.
Christopher Torres, Esq.
Kimberly S. Mello, Esq.
Seann Frazier, Esq.
Greenberg Traurig, P.A.
625 East Twiggs Street, Suite 100
Tampa, Florida 33602
Telephone      813-318-5700
Facsimile      813-318-5900
weinsteind@gtlaw.com
*Counsel for Defendants,*
*Mosaic Fertilizer, LLC &*
*Cargill Fertilizer, Inc.*

Edward A. Moss
Daniel B. Rogers
Jennifer A. Mcloone
SHOOK, HARDY & BACON LLP
Miami Center, Suite 2400
201 South Biscayne Blvd.
Miami, Florida 33131
Telephone      305-358-5171
Facsimile      305-358-7470
emoss@shb.com
drogers@shb.com
jmcloone@shb.com
*Counsel for Seminole Fertilizer Corp.*

Frank H. Gassler, Esq.
Michele G. Johnson, Esq.
BANKER LOPEZ GASSLER P.A.
501 E. Kennedy Boulevard, Suite 1500
Tampa, FL 33602
Telephone      813-221-1500
Facsimile      813-384-3992
fgassler@bankerlopez.com
mjohnson@bankerlopez.com
*Counsel for W.R. Grace & Co.*

/s/ John S. Kalil_____

John S. Kalil